IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SERVICIOS AERONAUTICOS, Z. S.A. DE C.V., a Mexican corporation | ) ) ) |
| Plaintiff, | ) Case No.: 14-cv-02514 ) |
| vs. | ) Judge Charles Norgle ) |
| JET SUPPORT SERVICES, INC., a Delaware corporation | ) Magistrate Judge Jeffrey Cole ) ) |
| Defendant. | ) |

**DEFENDANT'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant Jet Support Services, Inc. ("JSSI"), by its attorneys, as and for its Answer to the Amended Complaint ("Complaint") of Plaintiff Servicios Aeronauticos, Z. S.A. DE C.V. ("Plaintiff") states as follows:

**COMMON ALLEGATIONS**

**The Parties**

1. Plaintiff Servicios Aeronauticos, Z. S.A. de C.V. is a corporation organized under Mexican law, having its principal place of business and headquarters in Juarez, Mexico.

**ANSWER:**

JSSI lacks sufficient information to admit or deny Paragraph 1 and, therefore, demands strict proof thereof.

2. Defendant Jet Support Services, Inc. is a corporation organized under Delaware law, having its principal place of business and headquarters in Chicago, Illinois.

**ANSWER:**

Admitted.

### Jurisdiction and Venue

3. This Court has subject matter jurisdiction over this case under 28 U.S.C. §1332(2). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and complete diversity of citizenship exists between the parties.

**ANSWER:**

Admitted.

4. Venue is appropriate in this District under 28 U.S.C. §1391(b)(l) because Defendant's principal place of business and headquarters are located in Chicago, Illinois. In addition, the parties agreed to venue in this District.

**ANSWER:**

Admitted.

### Facts

5. On or about November 23, 2008, Plaintiff and Defendant entered into an aircraft engine maintenance program agreement entitled "JSSI Complete Engine Maintenance Program Contract, Servicios Aeronauticos, Z. S.A de C.V., Contract #EA-L60-060134-0" ("**Contract**"). Attached as Exhibit 1 is a copy of the Contract.

**ANSWER:**

JSSI admits the first sentence of Paragraph 5, but denies the second sentence of Paragraph 5 because a copy of the Contract was not attached to the Amended Complaint when it was filed.

6. Defendant prepared the first draft of the Contract. Defendant prepared all subsequent drafts of the Contract. Plaintiff did not draft any portion of the Contract or cause any language to be inserted in the Contract.

**ANSWER:**

JSSI admits the first two sentences of Paragraph 6 and denies the remaining allegations of Paragraph 6.

7. Under the Contract, Defendant agreed, in part, to continue providing a program for the repair and maintenance of the two turbine engines ("**Engines**") used in a certain Bombardier Lear Jet 60 owned by Plaintiff ("**Aircraft**") and to pay certain costs associated with maintaining the Engines. (*See* Ex. 1, p. 1 [Recital A], p. 16 [Exhibit B].)

**ANSWER:**

Paragraph 7 is a legal conclusion purporting to paraphrase the obligations set forth in a written instrument to which no response is required. To the extent a response is required, admitted.

8. The Contract term commenced on November 23, 2008, and lasted for a duration of sixty (60) months, ending on November 22, 2013. *(See* Ex. 1, p. 10, §V(e).)

**ANSWER:**

Paragraph 8 is a legal conclusion purporting to paraphrase the obligations set forth in a written instrument to which no response is required. To the extent a response is required, admitted.

9. The Contract was the third of three consecutive five-year written agreements between the parties concerning the repair and maintenance of the Engines. The first agreement was in effect from November 1998 through November 2003 ("**First Agreement**"). The second agreement was in effect from November 2003 through November 2008 ("**Second Agreement**"). Defendant drafted the First Agreement and Second Agreement. Plaintiff did not draft any portion of or cause any language to be inserted in the First Agreement or Second Agreement. (The Contract, First Agreement and Second Agreement are referred to collectively as the "**Contracts**".)

**ANSWER:**

Paragraph 9 is a legal conclusion purporting to paraphrase the obligations set forth in a written instrument to which no response is required. To the extent a response is required, JSSI admits the first three sentences of Paragraph 9 and denies the remaining allegations of Paragraph 9.

10. Defendant viewed the Contracts as a single contract divided into multiple terms.

3

**ANSWER:**

JSSI admits that each five year contract term was set forth in a separate written agreement, each one of which spoke according to its own terms and conditions and constituted the complete, integrated agreement of the parties, and otherwise denies any remaining allegations of Paragraph 10.

11. Under the Contract, Defendant agreed, in part, to arrange for parts and labor for the Engines at Approved Repair Facilities in order for Scheduled Maintenance and Unscheduled Maintenance to be performed (as those capitalized terms are defined in the Contract). The repair and maintenance services listed in the Contract, §I(a)-(f) ("**Services**"), were performed by third-parties -- not Defendant.

**ANSWER:**

Denied.

12. Under the Contract, Plaintiff agreed to make monthly payments ("**Monthly Payments**") payable to a Jet Engine Maintenance Trust account ("**Trust**"). *(See* Ex. 1, pp. 10-11, §VI(b).) During the term of the Contract, Defendant directed Plaintiff on its invoices to pay the Monthly Payments to the Trust. Plaintiff did not make Monthly Payments to Defendant.

**ANSWER:**

The first sentence of Paragraph 12 is a legal conclusion purporting to paraphrase the obligations set forth in a written instrument to which no response is required. To the extent a response is required, denied. JSSI admits that it directed Plaintiff to make payments to the "Jet Support Services, Inc. Maintenance Trust" and otherwise denies any remaining allegations of Paragraph 12.

13. During the terms of the Contract, Defendant withdrew sums from the Trust to cover (1) the charges of third-parties who provided the Services ("**Maintenance Expenses**"); (2) Defendant's administrative and supervisory fees calculated as a percentage of the cost of the Services ("**Management Fees**"); and (3) trust fees for the Trust ("**Trust Fees**"). The Management Fees were to compensate Defendant for its services under the Contract. Upon information and belief, 15% was the percentage figure used by Defendant to calculate the Management Fees during the term of the Contract.

**ANSWER**:

JSSI denies the allegations of Paragraph 13 that purport to define JSSI's "Maintenance Expenses," "Management Fees," and "Trust Fees," and further denies all remaining allegations of Paragraph 13.

14. The formula for determining the amount of the Monthly Payments was based on multiplying the Engines' operating times logged during the preceding month by a certain hourly rate ("**Hourly Rate**"). *(See* Ex. 1, pp. 10-11, §VI(b).)

**ANSWER:**

JSSI admits that under the Contract, Plaintiff was required to pay a monthly amount based on the Engines' monthly flight hours and an hourly rate. JSSI denies the remaining allegations of Paragraph 14.

15. The Contract granted Defendant the exclusive unrestricted right to set the Hourly Rate as of July 1 for each upcoming year. *(See* Ex. 1, p. 11, §VI(b).) When setting the Hourly Rate, the Contract did not require Defendant to consider any specific factors. The Contract granted Defendant the right to increase the Hourly Rate retroactively in the event Plaintiff used the Engines for excess Engine Cycles. *Id.* at §VI(c).

**ANSWER:**

Paragraph 15 is a legal conclusion purporting to paraphrase the obligations set forth in a written instrument to which no response is required. To the extent a response is required, JSSI admits that the Contract provided that JSSI could increase the Hourly Rate retroactively for a period during which actual operation exceeded an average of one (1) Engine Cycle per hour and denies the remaining allegations of Paragraph 15.

16. During the term of the Contract, Defendant increased the Hourly Rate from $192.95 to $302.38. Defendant increased the Hourly Rate on dates other than July 1. No Hourly Rate increases stemmed from the Engines being used for excess Engine Cycles.

**ANSWER:**

JSSI denies the first sentence of Paragraph 16. JSSI admits the second sentence of Paragraph 16, which benefited Plaintiff. JSSI admits that it did not increase the Hourly Rate retroactively because actual operation exceeded an average of one (1) Engine Cycle per hour, and JSSI denies the remaining allegations of Paragraph 16.

17. During the terms of the Contracts, Defendant had Plaintiff make Monthly Payments to the Trust in excess of the total Maintenance Expenses, Management Fees, and Trust Fees ("**Trust Balance**"). At least in part, Defendant had Plaintiff make payments to the Trust in excess of the total Maintenance Expenses, Management Fees, and Trust Fees in order to ensure that funds were in place to cover potentially expensive unscheduled or unexpected Maintenance Expenses incurred during the terms of the Contracts.

**ANSWER:**

Denied.

18. At the end of the term of the First Agreement, a Trust Balance existed. Most or all of that Trust Balance then remained in the Trust during the term of the Second Agreement. At the end of the term of the Second Agreement, a Trust Balance existed. Most or all of that Trust Balance then remained in the Trust during the term of the Contract.

**ANSWER:**

Denied.

19. Upon information and belief, at the end of the term of the Contract, the Trust Balance exceeded $800,000. This Trust Balance equaled, approximately, the cumulative amount of Monthly Payments made by Plaintiff during the terms of the Contracts less the sum of all Maintenance Expenses, Management Fees, and Trust Fees.

**ANSWER:**

Denied.

20. On November 22, 2013, the Contract term expired. On or about that date, Plaintiff notified Defendant in writing that it was electing not to renew the Contract and requested Defendant to disburse to it the Trust Balance. Plaintiff never took an act manifesting an intent to waive its right to recover the Trust Balance upon expiration of the Contract term. In response, Defendant acknowledged expiration of the Contract term but refused to disburse to Plaintiff the Trust Balance. Upon information and belief, Defendant has disbursed to itself the Trust Balance.

**ANSWER:**

JSSI admits the first sentence of Paragraph 20. JSSI admits that Plaintiff's counsel notified JSSI that Plaintiff did not want to renew the Contract. JSSI admits that Plaintiff sought a refund of the so-called "Trust Balance," but denies that Plaintiff was or is entitled to such a refund. JSSI admits that it acknowledged that Plaintiff elected not to renew the Contract, and it refused to provide any refund. JSSI denies all remaining allegations in Paragraph 20.

21. The Contract describes three instances where Plaintiff forfeits its right to any money remaining in the Trust. *(See* Ex. 1, p. 9, §§V(c)(v); V(d)(ii) V(d)(ii).) In this regard,

    a. Section V(c)(v) provides that, in the event Plaintiff sells the Aircraft during the Contract term to a party who does not want the Services, Plaintiff can terminate the Contract if it agrees, in part, to a "forfeiture of any and all moneys remaining in the Trust attributable to [Plaintiff]."

    b. Section V(d)(ii) provides that, in the event the Aircraft is damaged beyond repair or stolen during the term of the Contract, "all monies paid under this Contract may be forfeited ...."

    c. Section V(d)(iii) provides that, in the event Defendant terminates the Contract due to Plaintiff withholding or misrepresenting certain information, "all monies paid under this Contract may be forfeited ...."

**ANSWER:**

Denied.

22. Upon expiration of the Contract term, the Contract does not provide that Plaintiff forfeits its right to the money remaining in the Trust. Likewise, the First Agreement and Second Agreement do not contain such a provision. Upon expiration of the Contract term, the Contract does not provide that Defendant has the right to retain the money remaining in the Trust.

**ANSWER:**

Paragraph 22 consists of legal conclusions that purport to paraphrase the terms of a written instrument and to which no response is required. To the extent a response is required, denied.

## Count I
## (Breach Of Contract)

1-22. Plaintiff re-alleges and incorporates Paragraphs 1-22 of the Common Allegations.

**ANSWER:**

JSSI incorporates its answers to Paragraphs 1 through 22 above as though fully set forth herein.

23. Plaintiff fully performed its material obligations under the Contract. In principal part, Plaintiff did so by paying the Monthly Amounts requested by Defendant.

**ANSWER:**

Paragraph 23 is a legal conclusion to which no response is required. To the extent a response is required, JSSI admits that Plaintiff paid all amounts due under the Contract and denies the remaining allegations of Paragraph 23.

24. Defendant never terminated the Contract on account of Plaintiff failing to fully perform its material obligations.

**ANSWER:**

Admitted.

25. Defendant materially breached the Contract by failing and refusing to disburse the Trust Balance to Plaintiff upon expiration of the Contract term.

**ANSWER:**

Denied.

26. As a result of Defendant's material breach, Plaintiff has been damaged in an amount equal to the Trust Balance.

**ANSWER:**

Denied.

27. The Contract provides that, upon entry of a judgment in favor of a party on a breach of contract claim, the prevailing party is entitled to recover its "reasonable litigation expenses, including attorneys' fees." *(See* Ex. 1, p. 12, §Vl(h).)

**ANSWER:**

JSSI admits that there is a prevailing party attorneys' fees provision in the Contract and denies the remaining allegations of Paragraph 27.

## Count II
### (Breach of Contract, In The Alternative To Count I)

Count II was dismissed pursuant to a June 15, 2015 Court Order. (Dkt. Number 40.) Accordingly, no answer to Count II is required.

## Count III
### (Unjust Enrichment, In The Alternative To Counts I-II)

1-22. Plaintiff re-alleges and incorporates Paragraphs 1-22 of the Common Allegations.

**ANSWER:**

JSSI incorporates its answers to Paragraphs 1 through 22 above as though fully set forth herein.

23. In the alternative to Counts I-II, in the event the Contract is considered unenforceable, Plaintiff asserts a claim against Defendant for unjust enrichment.

**ANSWER:**

JSSI admits that Count III purports to assert a claim for unjust enrichment, and denies the remaining allegations of Paragraph 23.

24. During the term of the Contract, Defendant was aware of the expiration date in the Contract.

**ANSWER:**

Admitted.

9

25. During the term of the Contract, Defendant was aware of the possibility that the Contract would not be renewed upon expiration of its term.

**ANSWER:**

Admitted.

26. During the term of the Contract, Defendant required Plaintiff to make Monthly Payments that, when combined with the existing Trust Balance, exceeded the total Maintenance Expenses, Management Fees, and Trust Fees that Defendant reasonably expected to be incurred during the term of the Contract.

**ANSWER:**

Denied.

27. During the terms of the Contracts, Defendant caused Plaintiff to fund the Trust Balance to ensure money was in place to cover potentially expensive unscheduled or unexpected Maintenance Expenses.

**ANSWER:**

Denied.

28. Defendant did not render services to Plaintiff in exchange for the Trust Balance.

**ANSWER:**

Denied.

29. During the terms of the Contracts, Defendant did not incur unscheduled or unexpected Maintenance Expenses in excess of $100,000.

**ANSWER:**

JSSI admits that during the terms of the Contracts, the Engines did not require unscheduled maintenance, the costs of which exceeded $100,000 and otherwise denies any remaining allegations of Paragraph 29.

30. By retaining the Trust Balance instead of refunding the same to Plaintiff upon expiration of the Contract, Defendant is being unjustly enriched at the expense of Plaintiff.

**ANSWER:**

Denied.

33. Fundamental principles of justice, equity and good conscience will be violated if Defendant is permitted to retain the benefit of the Trust Balance funded by Plaintiff.

**ANSWER:**

Denied.

## AFFIRMATIVE DEFENSES

JSSI, by its attorneys, hereby sets forth the following affirmative defenses to Plaintiff's Complaint. By listing any matter as an affirmative defense, JSSI does not assume the burden of proving any matter upon which Plaintiff bears the burden of proof under applicable law. Moreover, by setting forth the following affirmative defenses, JSSI does not waive the right to assert additional defenses at a later date.

## GENERAL ALLEGATIONS

### The Parties

1. On information and belief, Plaintiff is a Mexican corporation with its principal place of business in Juarez, Mexico. Plaintiff owned or operated a Bombardier Learjet 60 (the "Aircraft"), with two Pratt & Whitney Canada Model PW305A engines (the "Engines").

2. JSSI is a Delaware corporation with its principal place of business in Chicago, Illinois.

3. JSSI offers programs that help jet aircraft owners manage and stabilize the significant costs of maintaining and repairing aircraft equipment, including jet engines. JSSI does not perform maintenance or repair services. The maintenance services are performed by third parties who are approved by the original equipment manufacturer (the "OEM"), the United States Federal Aviation Administration (the "FAA"), or the applicable governing aviation

11

authority outside the United States. JSSI's programs to provide its services are set forth in written contracts with its customers.

**The Contract**

4. Effective November 23, 2008, Plaintiff entered into a five-year contract (the "Contract") with JSSI concerning the repair, maintenance and service of the Engines. A copy of the Contract is attached as Exhibit 1 to Plaintiff's Complaint.

5. Under the Contract, Plaintiff agreed to pay JSSI a monthly fee based on the "Hourly Rate" per Engine specified in the Contract, multiplied by the number of hours the Aircraft flew. (Contract § VI(b).) In exchange, JSSI agreed to pay the costs of: (a) parts and labor for scheduled maintenance to the Engines; (b) parts and labor for certain unscheduled maintenance to the Engines; (c) parts and labor required by Airworthiness Directives and mandatory or required Service Bulletins; and (d) temporary rental engines and other components if the Aircraft would be unavailable to Plaintiff for an extended period of time while the Engines undergo maintenance covered by the Contract. (Id. § I.)

6. The Hourly Rate specified in the Contract was $192.95 per hour from November 23, 2008 to December 31, 2008, and $250.84 per hour from January 1 to June 30, 2009. (Id., Ex. B thereto, p. 16.)

7. The Contract provided that thereafter "[O]n July 1 of each year, JSSI [was] entitled to adjust its charges to the Customer, establishing the new Hourly Rate for the following twelve (12) month period." (Contract § VI(b).)

8. Thus, under the Contract, Plaintiff's financial obligation was to make Monthly Payments to JSSI. (Id. § VI(b).) In exchange, Plaintiff transferred to JSSI the risk for the costs of maintaining the Engines. At the time of contracting, the costs of scheduled engine maintenance and the frequency and costs of unscheduled engine maintenance, Airworthiness

Directives and mandatory and recommended Service Bulletins are unknown and ultimately could be more or less than the sum of all Monthly Payments to JSSI.

9. The financial risks undertaken by JSSI under the Contract were substantial. Among other things, JSSI's assumption of financial responsibility for the unpredictable costs and timing of aircraft maintenance is an extremely risky and expensive undertaking.

10. The Contract expired after five years on November 22, 2013, and Plaintiff elected not to renew for another five year period, which it had the right to do under Section V(e) of the Contract. (Contract § V(e).)

11. JSSI fully performed every obligation it had under the Contract.

**The Prior Contracts**

12. The Contract was the last in a series of three five-year contracts between the parties concerning the repair and maintenance of the Engines. The first contract was effective from 1998 through 2003 and the second from 2003 through 2008. (The first two contracts are collectively referred to as the "Prior Contracts.")

13. The terms of the Prior Contracts were similar in form and content to the terms of the Contract.

14. JSSI fully performed all of its obligations under the Prior Contracts.

**Plaintiff Pays All Amounts Due Without Protest**

15. Plaintiff never declared JSSI to be in default during the terms of the Prior Contracts or the Contract, when the parties still were performing.

16. Plaintiff paid all amounts due to JSSI and never objected to any of JSSI's Hourly Rate adjustments during the terms of the Prior Contracts or the Contract.

13

17. Had JSSI known that Plaintiff disputed or would dispute its Hourly Rates or the amounts Plaintiff paid JSSI under the Prior Contracts or the Contract, JSSI would not have continued performing. However, Plaintiff did not object, and JSSI continued to perform.

18. The Contract has a prevailing party attorneys' fees clause. (Contract §VI(h)).

**FIRST DEFENSE**

19. Defendant realleges and incorporates by reference paragraphs 1 through 18 of its General Allegations above as though fully set forth herein.

20. The claims asserted by Plaintiff in the Complaint are barred, in whole or in part, by the Voluntary Payment Doctrine.

**SECOND DEFENSE**

21. Defendant realleges and incorporates by reference paragraphs 1 through 18 of its General Allegations above as though fully set forth herein.

22. The claims asserted by Plaintiff in the Complaint are barred, in whole or in part, by the doctrine of estoppel.

**THIRD DEFENSE**

23. Defendant realleges and incorporates by reference paragraphs 1 through 18 of its General Allegations above as though fully set forth herein.

24. The claims asserted by Plaintiff in the Complaint are barred, in whole or in part, by the doctrine of waiver.

WHEREFORE, JSSI requests that the Court: (A) enter Judgment in its favor and against Plaintiff on all counts of Plaintiff's Amended Complaint; (B) award JSSI its reasonable attorneys' fees and costs; and (C) grant JSSI such other and further relief as is appropriate.

        Respectfully submitted,

        JET SUPPORT SERVICES, INC.

        By:     /s/ Monte L. Mann
              One of Its Attorneys

Monte L. Mann
*mmann@novackmacey.com*
Christopher S. Moore
*cmoore@novackmacey.com*
NOVACK AND MACEY LLP
100 N. Riverside Plaza
Chicago, Illinois 60606
Telephone: (312) 419-6900
Facsimile: (312) 419-6928
*Attorneys for Defendant Jet Support Services, Inc*
Doc. # 738457

15

**CERTIFICATE OF SERVICE**

Monte L. Mann, an attorney, hereby certifies that on July 20, 2015, he caused a true and correct copy of the foregoing **Defendants Answer to Plaintiff's Amended Complaint**, to be filed electronically with the Court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system.

/s/ Monte L. Mann